UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, )<br> )<br> Plaintiff/Counterclaim Defendant )<br> )<br> v. )<br> )<br>RUSSELL CHRETIEN, )<br> )<br> Defendant/Counterclaim Plaintiff ) | 1:12-CV-00038-JCN |

**ORDER ON DEFENDANT'S MOTION TO EXCLUDE**

This action involves a commercial dispute related to the end of Defendant and Counterclaim Plaintiff Russell Chretien's (Chretien) Exclusive Agency Agreement with Plaintiff and Counterclaim Defendant Allstate (Allstate).

In its initial Complaint, Allstate alleged that Chretien violated the Exclusive Agency Agreement when he engaged in competitive insurance sales activity within a prohibited region, solicited business from prohibited customers, and failed to secure non-competition and non-disclosure agreements from his Agency's employees. Following the filing of an amended complaint, and after the Court's order on the parties' cross-motions for summary judgment, Allstate maintains claims for breach of contract (Counts I & II) and misappropriation of trade secrets and confidential information (Count VI). (Amended Complaint, ECF No. 100.)

In response to Allstate's complaint, Chretien filed a counterclaim. (Answer and Counterclaim, ECF No. 104.) In his counterclaim, Chretien alleged that Allstate violated the Exclusive Agency Agreement when it failed or refused to assist him in the sale of his economic interest in the business and/or when it failed to compensate him for his Allstate book of business

in accordance with the formula set forth in the Exclusive Agency Agreement. Chretien also asserted that Allstate did not properly compensate him because of his whistleblower activity. After the Court's summary judgment ruling, Chretien maintains claims for breach of contract (Counterclaim I) and whistleblower retaliation (Counterclaim VI).

Allstate has filed a motion to exclude from trial certain designated expert testimony related to Chretien's economic damages. (Motion to Exclude, ECF No. 178.) Through its motion, Allstate challenges the anticipated testimony of Chretien, the testimony of his current employer, Christopher Condon, and the testimony of Reginald Perry, a certified public accountant.

**FACTUAL BACKGROUND**

*A.    Reginald Perry's Opinions and Professional Background*

In his Revised Designation of Reginald Perry (ECF No. 178-4), Chretien designates Mr. Perry to testify as to two valuation methodologies for determining the value of Chretien's book of business. Mr. Perry has worked as a certified public accountant for 28 years, and has experience in business valuation.

According to the designation, Mr. Perry will discuss in general terms the income and market approaches to business valuation, but will not testify "to the actual value of Mr. Chretien's book of business" under either approach. (Revised Expert Designation of Reginald Perry at 2.) Chretien represents that Mr. Perry will assert that "he would use both . . . approaches in valuing an Allstate insurance agency, paying particular attention to published market data that summarizes Allstate agency price (value) to renewal commission ratios and Allstate agency value ratios of agency price to total revenues." (*Id.*) Mr. Perry also expects to testify that in assessing the value an insurance agency, an accepted industry norm is to use "a multiplier of 2.2 to 2.5 of sales price

2

to agency renewal commissions" or "a multiplier of 2.0 to 2.2 of agency sales price to total revenue." (*Id.*)

B. ***Russell Chretien's Opinions and Professional Background***

The Designation of Russell Chretien (ECF No. 178-1) represents that Chretien intends to testify concerning the value of the Whitehouse Agency upon the termination of his Exclusive Agency Agreement with Allstate. He anticipates that he will testify that the value of the agency is approximately $765,000, based on the use of "a multiplier of 2.55% as applied to the projected earned premium/renewal commission total for his agency for 2011 of approximately $3,000,000." (Designation of Russell Chretien at 1, ¶ 3.) Additionally, Chretien "will opine that [2.55%] is an appropriate multiplier and an industry-accepted method of calculating the fair value of an Allstate book of business." (*Id.*)

Chretien also expects to testify "that it is Allstate's practice to support the sale of a terminating agent's book of business through advertising and otherwise, and that it was Allstate's lack of support which lead to his inability to sell to a third party." (*Id.*) Finally, he will opine that it is economically advantageous to Allstate not to support such a sale and, instead, to distribute an agent's book of business to other area agents. (*Id.*)

As the bases of his opinions, Chretien cites his knowledge and experience as "the operator of a 'captive' insurance agency for 5 years and his specific personal knowledge of the operation and performance of his agency for 2011." (*Id.* ¶ 4.) His opinions will also be based on his knowledge of Allstate's business methods and commission structures, and his "awareness" of "at least one online service which tracks the value of Allstate agencies and publishes related statistics." (*Id.*) His valuation of the business is also based in part on his purchase of the Whitehouse Agency's book of business at a price determined with the use on a multiplier of 3, which multiplier Chretien

adjusted as part of his computation of the current valuation of the business in order to account for "difficulties Allstate has created for its exclusive agents' compensation." (*Id.* at 1-2, ¶ 4.)

Chretien maintains that he is qualified to offer the proffered opinions based on his purchase of, ownership of, and management of the Whitehouse Agency/Allstate Exclusive Agency, based on the fact that he has been a licensed insurance agent since 1986, based on the fact that he holds a Series 6 Securities License, and based on the fact that he has over 15 years of combined prior experience as an insurance adjuster, marketing manager, and independent agency manager, including within the Allstate organization. (*Id.* at 2, ¶ 5.)

## C. *Christopher Condon's Opinions and Professional Background*

In the Designation of Christopher Condon (ECF No. 178-2), Chretien states that Mr. Condon will testify that Allstate "takes no steps to guarantee the confidentiality of allegedly proprietary information, including, but not limited to premium amounts paid by its customers and personal information about its insureds, in the hands of an independent agent." (Designation of Christopher Condon at 1, ¶ 2.A.) Mr. Condon is also expected to testify that "in Central Maine . . . many factors affect a customer's decision to change his or her insurance carrier," price being the most important and personal relationship with the agent being a less important factor than service, coverage, and convenience. (*Id.* ¶ 2.B.) Chretien also expects Mr. Condon to testify that a person typically does not change insurers simply because that person is contacted by a former agent with whom the person has had a long relationship. (*Id.*) Mr. Condon bases his opinions on his experience as an insurance salesman and as "owner and operator of the second largest independent insurance agency in Maine for the past 20 years." (*Id.* ¶ 3.)

## DISCUSSION

**A.  Opinion Testimony Standards**

Pursuant to Rule 702 of the Federal Rules of Evidence:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
  (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
  (b) the testimony is based on sufficient facts or data;
  (c) the testimony is the product of reliable principles and methods; and
  (d) the expert has reliably applied the principles and methods to the facts of the case.

"Federal Rule of Evidence 702 assigns to the district court 'the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.'" *Smith v. Jenkins*, 732 F.3d 51, 64 (1st Cir. 2013) (quoting *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 597, (1993)).

Under the Rules, lay opinion is also permitted under certain circumstances.  Pursuant to Rule 701, lay opinion testimony is admissible, provided that it is:

(a) rationally based on the witness's perception;
(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Of note, Rule 701(c) is designed to ensure that the reliability requirement of Rule 702 is not "evaded through the simple expedient of proffering an expert in lay witness clothing." *United States v. Valdivia*, 680 F.3d 33, 58 (1st Cir. 2012), *cert. denied,* 133 S. Ct. 565 (2012) (discussing 2000 Amendment to Rule 701 and quoting Fed. R. Evid. 701 advisory committee's notes)).

**B.  Discussion**

Allstate maintains that none of the designated expert witnesses has the requisite education, training or experience to testify to the proffered opinions.

1. *Relevance of business valuation opinion testimony by Chretien and Perry*

Allstate first contends that opinion testimony related to the market value of Chretien's business is not designed to assist the trier because the Court previously determined that Chretien's economic damages are limited to the loss that he experienced as the result of Allstate's failure to compensate him in accordance with the Exclusive Agency Agreement's Termination Payout Plan formula. In other words, according to Allstate, because Chretien cannot recover damages based on the amount that a third party might have paid for Chretien's book of business, any evidence, including expert testimony, regarding the market value of the business is not relevant.

In support of this argument, Allstate cites a portion of the Court's decision on the parties' cross-motions for summary judgment. Allstate, however, reads the Court's prior decision too broadly. As part of its reasoning for the grant of summary judgment in favor of Allstate on Chretien's fraud claim, the Court observed that Chretien could not use his fraud claim "to rewrite the Exclusive Agency Agreement to require Allstate to pay market value rather than the TPP if he can show that Allstate failed to make a good faith effort to shoulder the burden of finding him a buyer, a burden it never assumed under the Exclusive Agency Agreement." (Recommended Decision at 32.)[1] While the terms of the Exclusive Agency Agreement will obviously be pertinent to the damages that Chretien possibly could recover in the event of a breach of the agreement, the Court's summary judgment decision cannot be construed as defining the scope of the recoverable damages on Chretien's breach of contract claim. The contract damages, if any, to which Chretien might be entitled in the event of a breach of the contract, was not an issue at summary judgment. Whether market value is a proper measure of Chretien's damages for breach of contract will be decided in the context of the trial.

---

[1] The decision was in the form of a Recommended Decision that was adopted by the Court, over objection. The parties subsequently consented to proceed before the Magistrate Judge. (ECF No. 177.)

> 2. *Testimony of Reginald Perry*

Allstate argues that because Mr. Perry has no experience in valuing an insurance agency such as the Whitehouse Agency, Mr. Perry is not qualified to testify regarding the proper methodology for assessing the value of Chretien's interest in the business. Not insignificantly, Chretien does not offer Mr. Perry to testify as to the value of the business. Instead, Mr. Perry is expected to testify as to the proper methodologies for valuing the business.

Chretien has established that Mr. Perry has the education, training and experience to testify as to the acceptable methods for valuing a service based business. Allstate's suggestion that the methodologies endorsed by Mr. Perry are not applicable to an insurance business is an argument that goes to the weight of Mr. Perry's testimony rather than admissibility.

Because Mr. Perry is not prepared to testify as to the value of the business, the more central issue is whether Mr. Perry's anticipated testimony is relevant. The Court understands that Chretien intends to testify to the process by which he determined the value of the business. To the extent that Chretien provides the foundation necessary to permit him to testify regarding the value of the business, and provided that Chretien's method is consistent with the methodologies endorsed by Mr. Perry, Mr. Perry's testimony as to the proper methodologies for valuing this business could be relevant and thus admissible.

Based on the current record before the Court, with one exception, the Court is not persuaded that exclusion of Mr. Perry's testimony is warranted. As for that exception, the record lacks any basis upon which Mr. Perry could testify regarding the "multiplier" that Chretien contends is typically used when valuing an insurance business. Chretien has not established that Mr. Perry has the knowledge or experience to explain how the multiplier is calculated or why it is an appropriate factor in determining the value of an insurance business.

### 3. Russell Chretien's Expert Testimony

Chretien intends to testify regarding the value of the business, and why, from a business perspective, Allstate would not be inclined to support the sale of Chretien's business interest in the agency. Preliminarily, the Court notes that some, and perhaps most, of the contested testimony can fairly be considered factual or within lay testimony that is permitted under Rule 701 of the Federal Rule of Evidence. For instance, as the owner of the business, Chretien can testify regarding the value of the business and the manner in which he determined the value. Fed. R. Evid. 701 advisory committee's notes (noting that "[s]uch opinion testimony is admitted not because of experience, training or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business"). *See, e.g., Robinson v. Watts Detective Agency, Inc.*, 685 F.2d 729, 739 (1st Cir. 1982) ("An owner of a business is competent to give his opinion as to the value of his property."). As a party, Chretien's proposed testimony concerning his damages calculation is fairly treated, in the main, as based on his own perceptions and helpful to a clear understanding of his testimony or the determination of a fact in issue. *See* Fed. R. Evid. 701(a), (b). For example, he could testify regarding the price that he paid for the agency, the manner by which the parties arrived at the purchase price, and how the price compares to Chretien's current view of the value of the business. At this point, therefore, the contested testimony appears to consist of, primarily, either factual evidence or permissible lay opinion testimony. The Court recognizes, however, that context and foundation are important to the Court's ultimate determination of admissibility, and that Rule 701(c) may require additional scrutiny of Chretien's testimony. The Court, therefore, will defer to trial a final ruling on Allstate's challenge to certain portions of Chretien's trial testimony.

*4.     Christopher Condon's Expert Testimony*

Allstate maintains that Mr. Condon is not qualified to testify to the opinions for which he has been designated as an expert witness. Alternatively, Allstate argues that the opinion testimony would not be helpful to the jury.

Chretien has demonstrated that Mr. Condon has the requisite experience and expertise to testify as to practices within the insurance business, including how, from an insurer's perspective, consumers make decisions regarding the selection of insurance companies and agents. In other words, if the evidence is relevant, he could testify, based on his experience in the insurance business, as to which factors that he believes influence a consumer to change agents or policies. Mr. Condon, however, does not have sufficient knowledge or expertise to testify on an opinion basis as to Allstate's efforts to protect the confidential and proprietary information in the context of the agreement between Chretien and Allstate. On this record, the Court is not convinced that Mr. Condon is sufficiently knowledgeable about the parties' responsibilities under, and the management of confidential information under, the Exclusive Allstate Agency agreement. [2]

Whether Mr. Condon's testimony, including any factual testimony based on his experience with Allstate, is helpful to the jury or relevant to the proceedings is a determination that is appropriately left for trial. Most, if not all, of Mr. Condon's testimony is potentially related to Chretien's defense of Allstate's direct claims, or in response to Allstate's defense of Chretien's counterclaim. The Court cannot, therefore, determine whether much of Mr. Condon's testimony is actually admissible until Allstate presents evidence at trial.

---

[2] The Court is also not convinced that evidence regarding Allstate's efforts to protect confidential and proprietary information is relevant to the trial issues. If the evidence is relevant, the Court would address at trial whether Mr. Condon could testify as to his experience during his relationship with Allstate, which testimony, if admissible, would be limited to factual and not opinion evidence.

## CONCLUSION

Based on the foregoing analysis,

1. The Court denies in part and grants in part Allstate's Motion to Exclude testimony of Reginald Perry. The Court precludes Mr. Perry from testifying as to the use of a "multiplier" in the valuation of Chretien's business interest. Mr. Perry may testify regarding the proper methodologies of valuing a service-based business, provided that Chretien establishes the relevance of said testimony.

2. The Court defers to trial Allstate's Motion to Exclude certain testimony of Russell Chretien.

3. The Court grants in part, denies in part, and defers in part Allstate's Motion to Exclude testimony of Christopher Condon. Mr. Condon may not offer any opinion testimony regarding the quality of Allstate's efforts to protect confidential and proprietary information. Mr. Condon may offer opinion testimony regarding the factors that influence consumers to change insurance coverage and/or insurance agents, provided that Mr. Chretien establishes at trial the relevancy of said testimony. The Court defers to trial whether Mr. Condon can testify regarding certain facts that are based on his personal experience with Allstate.

4. The Court will determine in the context of the trial the proper measure of damages in the event that Chretien prevails on his breach of contract claim.

*So Ordered.*

/s/ John C. Nivison
U.S. Magistrate Judge

March 19, 2014